May it please the Court, my name is Julie Merge and I represent a plaintiff, a felon at Hayes Latin. The issue for decision here is whether the lower court cared in construing the inflictable law. The Court relied on the Hamilton case that this Court decided to conclude that, to create a right-of-life rule that, in all cases, felon of a bankruptcy petitioner to disclose, in writing, a potential claim as far as the subsequent action on that claim. The lower court sided with Hamilton in its decision and fell to a page in the balancing test required by the Massachusetts Supreme Court in the financial v. Hayes case. You don't think the Court balanced the equities at all? I don't see that, Your Honor, neither in the written order or in the transfer, that there was any balancing of the equities. If you read through the book, one sentence in the order that says, Hayes lawfully holds that felon should be given all of the equities scheduled to be passed at the bar of the plaintiff. But that's a pretty strident ruling. There was absolutely no balancing of equities. Unlike in the case of Hamilton, where there was a balancing test under the Massachusetts Supreme Court case. In this case, the lower court had balanced the equities. I submit that the purpose of judicial stock was not discerned by the law in this claim. As Judge Jones said in his order, Mr. Hayes didn't disclose Berkeley, his potential asset against Jacob. He also lied because his wife was doing it. And it's undisputed that he did not intend to deceive the Court. Mr. Pat, trustee, also submitted that case in the form that was not discussed in the written order. In fact, the trustee, that he also had advised Mr. Lattner not to do anything to deceive the Court. It's important to note that this particular case is so much unrepresented by counsel. Most of the cases cited are held by the circuits or cases in which no corporations are represented by counsel. Counsel, do you think Hamilton can be fairly read to have a bright-line rule? No, Your Honor, although there is that sentence that was acknowledged by two different courts. That is confusing, admittedly. A sentence that said, Barclays, Barclays can write your asset, Barclays can claim. So I would not submit that it creates a bright-line rule unless there is an understanding, perhaps like Judge interpreted it that way. If you read Hamilton, Hamilton did balance the equities. And what is distinctive about Hamilton is there is no doubt there was an intention to deceive. The trustee dismissed the lower court claim after he had argued the court's death, but pushed that to an opinion. But something happened to make him actually dismiss the bankruptcy. And the language there was that it was a lack of confidence under oath, bad faith, and a failure to cooperate by petitioner. That is not the situation here in any way, shape, or form. So even though there is no explicit discussion in Hamilton of intent, the prior light circuit cases and a fair reading of Hamilton certainly suggests that intent is a very important factor in administering judicial estoppel. But what language in Hamilton would you point to that says that intent is relevant here? It doesn't. There is no language that says specifically intent is relevant here. Absolutely not. But if you read what I did, it's going back to reading the circuit opinion, it cites to the trustee's attention and also to the court's opinion that it was fraud on the court and there was lack of But if you look at the Johnson v. Arden Department of Human Resources case, the Hawthorne v. Ferguson case, the Henry Cory case that was cited by New Hampshire v. Maine, there's a clear thread across this court suggesting that intent is something that must be considered in balancing the equity, determining what it is. Counsel, you gave us what you thought were the equities on Mr. Lattin's side, that is that he disclosed this to Trustee Pack and that he was unrepresented by counsel. Now I'm going to ask you to work against the interests of your client and tell us what are the equities on the other side. What happens when Mr. Lattin fails to disclose a claim in bankruptcy and then comes forward and pops up later on and decides to press the claim? Fails to disclose it in writing, the claim number? You're talking about in writing he fails to disclose it? Right. He discloses it to Pack. He does not disclose it to the bankruptcy court. That's the important thing is that the court has been deprived of this even though the party seeking bankruptcy is fully aware of these facts. So who else may have been damaged here? Was ProSystems a creditor here? ProSystems itself was. Yeah. No, Your Honor, I don't believe that ProSystems itself was a creditor here in the bankruptcy schedule. The unit was a creditor under the disability overpayment that Mr. Lattin did set forth. And they are a party here? Yes, Your Honor. Okay. So we have a party here who was also a creditor in the bankruptcy and has presumably been denied whatever benefits would have accrued from Mr. Lattin disclosing this claim, this asset. Well, and that's why I think the trustee's opinion is important here because he consulted legal counsel and came to the opinion that it would be an innocent asset. But it wouldn't be the trustee's call to make. Mr. Lattin didn't know that. And we're looking at what did Mr. Lattin do to the court essentially for consent? Well, you can't deny, though, that there was an advantage to not having to defend this against the creditor's challenge to the exemption, right? Because the creditors could have challenged whether or not the asset was exempt. Absolutely. They could have. There's no evidence in this case that they would have, but they could have certainly. They didn't get the opportunity to because it wasn't disclosed. You're correct, Your Honor. And what I would just ask the court to keep looking back at is there's no suggestion that Mr. Lattin would have done exactly what the trustee did. Even if a trustee erred, should Mr. Lattin still pay tenants to disclose, albeit wrong, for his claim? And, you know, judicial stock is supposed to be used sparingly and only in appropriate situations. What is the public policy that's going to be advanced if we bar Mr. Lattin's claim? I don't know that there would be any deterrent in the future because he would go back. I mean, the next time there's no suggestion that he would not consent to that thing he did before or to another petitioner if they're not represented. So I don't think that what his failure should be translated to judicial stock, because there simply wasn't an intent to deceive him. That's not the message. What do we do with the fact that he was not represented by counsel? I mean, why is that Unum's – why does Unum have to sort of suffer the consequences of the petitioner's failure to get counsel here? Because Unum wants to apply judicial stock to this claim. Right. But why does it become Unum's problem if the other side fails to get counsel? Why does that become Unum's problem? Yeah. I don't think it is Unum's problem. I think it just is something that must be considered, determining whether this claim should be barred. I mean, obviously, Unum can't determine whether there was, you know, the petitioner is going to be represented or not represented. But just take the fall that, you know, they put on notices of credit. And throughout their briefs, they say how they knew that they knew that. If Lattin had secured counsel, would this asset have been left off the books? It shouldn't have been. It shouldn't have been. And that turns out to be Lattin's problem, doesn't it? I mean, there's sort of a self-help here. He could have hired counsel in his bankruptcy and gotten good advice. He didn't. He didn't disclose all of his assets. Is there an affirmative obligation to – or a petitioner to hire counsel? Well, only if you want to have the benefit of the fullest extent of the bankruptcy laws. None of the cases I've looked at discuss that particular aspect, Your Honor. I understand he wants to save money, and I don't blame him at all for that. I'm not assessing sort of fault on that. But there are some consequences here to his decision not to require counsel. And one of the consequences are that he has been sort of the beneficiary of having omitted something from his filing. Well, again, there was something omitted from his filing. The question is, did he have anything to do with it being omitted from his filing? He definitely had something to do with it. It was his responsibility to put down everything, regardless of whether he talked to the trustee. It's still the petitioner's obligation to make sure that the schedule is complete. And he didn't do that, Your Honor. And the question I would – the issue – the cases I've read in the Ninth Circuit would not therefore bar his claim. What's your strongest case? In the circuit on that? Yes. The Johnson v. Oregon Department of Human Resources is most probably the strongest case in this circuit. Is that a bankruptcy case? No, that was an ADA case. It's the bank – there's – Campson is the bankruptcy case. The other case that Johnson cites, however, is the Ryan Operations case, which is a Third Circuit case. In the other cases discussed, like the Pellissier v. Oneida case, which is also a Third Circuit case. But in the Ryan Operations case, it was a bankruptcy case. And there was strong language to the fact that there's no motive to conceal. There wouldn't have been a different outcome. If, in fact, there had been a written disclosure. So, the strong language of the case, Your Honor, lies in his non-substantive ADA case. But the language is wrong. Unless it's a conglomerate, unless it's a deliberate manipulation, you've got to be more careful before you apply judicial estoppel because it's simply not fair. Judged by this common common standing, and you also have to look at, you know, the advantages or the disadvantages of a superposition or four not disclosing this. In this case, the lease custody pact with the driver-in-law said that there would not be a disadvantage, was possible, or a value to the superposition. All right. Thank you, counsel. You've exceeded your time. We'll give you one minute for rebuttal. Thank you, Your Honor. May it please the Court. Good morning. Lawrence Kasten for the Antalese. I'd like to follow up on a point, Judge Bidey, that you were raising about the lack of counsel. Mr. Lattin didn't have counsel, but he actually did pretty well. If you look at the supplemental excerpts, page 52, I think it's an important page. That's the page of the bankruptcy petition that requires the debtor to identify those assets he claims were exempt. Mr. Lattin identified no fewer than seven such assets, retirement account, clothing, the checking account, and he even got the statute right, the Nevada statute that provides the exemption. It's about the same statute that he's now arguing on appeal, gave him an exemption with respect to his disability payments. So he listed seven assets. He conspicuously omitted his disability payments point, and now he's here saying, nevertheless, he was permitted to pursue them. You're not suggesting that he deliberately did this. I mean, it appears from the record fairly clear that he was advised by the trustee in bankruptcy, you don't have to list these, and that had the force of the trustee in bankruptcy going to his counsel and counsel advising the trustee and then the trustee coming back to Mr. Lattin and saying, no, that's exempt. You need not put it on. Here are the facts we know. We know that he listed seven assets that he claimed were exempt. We know he knew enough to ask the trustee the question, yet he didn't, in his petition two months earlier, identify that very same claim that he asked the trustee about. Deliberate? No. Intentional? Well, he filled out the forms and he answered the questions and did not list either his claim or his disability policy. And I think this gets to a point, though, that counsels argue pretty strongly about whether intent to deceive is required. Counsel cites the Johnson case. As the court noted, that is not a bankruptcy case. Hamilton is a later case and is a bankruptcy case. And it cites many cases, the same set of memories, including the Henry Coastal Claims case. And I think that's the best case about what level of censure is required by the debtor when you omit a claim on a schedule. And that's also a bankruptcy case. The debtor, the court said it was. And this is also what this court said to Hamilton. Disclosure is crucial in bankruptcy. It's the whole keystone to bankruptcy. A debtor gains something very significant from bankruptcy. Disclosure is important. So the Henry Coastal case says we're only going to recognize inadvertence in two very narrow circumstances. One, where the claimant didn't know about the case, or two, where there was no evidence to conceal because no advantage was gained. Well, we know the disclosure here. The debtor did not know about the claim. He concedes that. With respect to what advantage was gained here, the courts already identified, one, no creditor was given the opportunity to solicit a consensual claim. But there was a second significant advantage that Mr. O'Bannon didn't give. He owed Newton over $60,000. That's undisputed. In fact, there's considerable evidence in the record that the reason he declared bankruptcy was in order to retire that debtor. He wrote a letter to Newton where he probably found something saying, I can't afford to pay you back. This may be forced into bankruptcy. He scheduled that debt without scheduling his corresponding litigation claim. As a result, he obtained a discharge. Newton cannot go after that money without violating the discharge. At a minimum, if Mr. Lattin identified his litigation claim. Did Newton get any of the $60,000? I got it. If he had identified that claim in his bankruptcy petition, at least under bankruptcy law Newton would have had an offset claim. So that if Mr. Lattin ultimately forgets his litigation claim and gets future benefits, Newton can offset those benefits by $60,000. Counsel, do you take issue with opposing counsel's representation that the district court failed to balance the equities in this case? No, Your Honor. And I'm not asking for a bright-line test. I don't think the trial court imposed a bright-line test. I think this defining what was in the district court's head by looking solely at the district court's testimony.  I think the district court's testimony, in my opinion, isn't, I'm not sure, accurate. The trial court could have entered a one-line order, and we'd still be here on appeal, and the question would still be the same. Did the trial court abuse its discretion on these facts finding judicial estoppel? And I think that's important. This is an abuse of discretion standard. Maybe the district court could have reasonably done something else. Maybe not. The question is, did it abuse its discretion in finding judicial estoppel on these facts? You are doing a bright-line test, though, aren't you? Aren't you saying that because of the nature of the bankruptcy inquiry, that judicial estoppel must apply differently in the bankruptcy context than in other contexts? Because there's a legion of cases that say misrepresentation is one of the essential elements to applying judicial estoppel in other contexts, deliberate misrepresentation, which you've referred to as scienter. And here you're saying, eh, it shouldn't apply with equal force in the bankruptcy context. Isn't that advocating a bright-line rule peculiar to bankruptcy cases? I don't think it's advocating a bright-line rule. I mean, when I say that, I'm not – I am arguing that it's different in bankruptcy cases. Absolutely. But I guess the question is, if the trial court had decided on these facts not to apply judicial estoppel, I'd have to be here arguing that that was an abuse of discretion. And I think the question is where the facts can admit to reasonable acts of discretion whether this Court should reverse. I think that's what the standard means. But it's not a bright-line test, Your Honor. But I think a failure to recognize Hamilton's application here could lead to much more pernicious results on the other side. What if Mr. Lattin's claim here were not, I talked to the trustee, but instead I Googled him? I looked at Google. I figured I have an exemption. I don't need to go to them. A Frenchman's argument. I'm not sure that those are significantly different cases. I admit they're somewhat different. But I don't think – I think it's difficult to affirm Mr. Lattin's case, but not also open the door for those same kinds of arguments. I'm just wondering why are bankruptcy cases different? I really wouldn't – I really wouldn't say that the Postal Point case is the best case. What happened in the United case was that a party scheduled a debt to a creditor, but didn't schedule a corresponding claim. That's exactly the status. And the Third Circuit there said that's enough of an advantage gain for application of judicial asylum. Precisely what happened here. The scheduling of a debt to a creditor, but not the corresponding claim with the relying officer. And the relying officer that the Postal Counsel discusses very carefully distinguished the United case to make clear that it wasn't talking about that particular circumstance. I hope I've answered all the questions. There are a lot of questions. Unless there are any questions. It appears there are not. Thank you, Counsel. Thank you, Your Honor. Counsel, we'll give you one minute for rebuttal. There's no record below that anything that Mr. Black had he actually written on the schedule, his claim would have resulted in any different result. That is what was acknowledged in the Ryan case. And also, with respect to – What about counsel's claim that that unit would have asked for an offset against any future claims? It's a convenient argument right now, Your Honor. Simply there's no evidence below that that was done. There was no affidavit. How would they know? The claim wasn't disclosed. The claim wasn't disclosed. That's correct. Although they did have knowledge of the pending litigation and kept talking about it in briefs. And they were advised that they put on – they had a claim at the creditor's meeting. So I don't submit that there is any legitimate basis on which one could conclude that they were ever going to make a claim on a potentially exempt asset. Why wouldn't they? Because it would be an exempt asset. Now, as to the offset issue. Right, the offset. I think it's a critical thing. The offset issue, as I've said in my briefs, if you allow this claim to proceed, that they have the right to an offset. Absolutely. Against the death that's already been discharged? Absolutely, Your Honor. I mean, if he's stopped in bankruptcy, he doesn't proceed with the claim. He doesn't go forward and proceed with the claim. Everybody's going to go on their own way. He's never going to have any liquidated claim against which to offset. If you allow the claim to go forward, he would absolutely – What's the addendum clause here? What's his claim for damages in this, in your suit? Pass benefits and be put back on claim. About how much? Well, it's 2865. It's in his 50s. I mean, it's well in excess of the offset. I believe his monthly payment is about $3,900 to the Social Security offset. So we would be talking several hundred thousand dollars. I don't have a calculator. There's no risk, if this is for real, that he would be in a position to pay. And people always complain that it would be disingenuous to come to a court and say it was. So they probably just want to set it that way. And so what you're asking is effectively that you be allowed to continue acknowledging that there will be an offset and you're sort of put in the same position that you would have been had he disclosed the asset in the first place. I guess that is what I'm asking, Your Honor, and just to consider the equities in this particular case, which I don't believe the lower court did. And I do think Hamilton applies. I wouldn't say it doesn't. Was there any procedure by which he could go back and amend his bankruptcy proceeding or in which he could stipulate to an offset here? If he knew to do it, he simply did to do it. Okay. But in your proceeding before Judge Jones, did you have any thought? Was there any thought to going and saying, look, it looks like we've made a mistake here. Let's do substantial justice and concede the offset. You talked about my argument in my summary judgment. I do remember discussing exactly what I just discussed with you. I'm not sure how to cure it. I don't remember if my exact words were. But certainly there has to be a mechanism to try to cure it. I'm not thankful to the attorney. I wouldn't sure how to do it. But I did throw that out to Judge Jones. Sure. I mean, you have to. It has to be fair for everyone. So, no, did not do anything at that point. When he sent a $60,000 debt to Unum that he's asking to have discharged and he fails to disclose something that you're telling us now is worth several hundred thousand dollars, it does seem like a pretty significant omission, doesn't it? And especially for Mr. Lattin. It would be a significant omission. Maybe not for General Motors today. I will say is that when you read question 9 and question 20 on the bankruptcy schedule, I don't think a layperson would understand that they're supposed to calculate, get a pencil and paper out and calculate, okay, if you can pay me the $865,000, I will get this much minus the offset amount, and I'm going to put that in my paper. I mean, that's why, again, in this particular case, his reliance on trust and practice was appropriate. And there's no way to conceal it. Counsel, what's your response to opposing counsel's observation that Mr. Lattin was pretty astute in listing his other exempt assets before he even talked to the trustee but conveniently omitted this one asset, even as exempt? I don't know. Your Honor, I don't think he knew that it would be an exempt asset because he never disclosed it. I mean, if he thought it was going to be an exempt asset, there would be no reason for him not to disclose it. And how would he even know to ask the question of the trustee as to whether or not it should be listed? Because based on the affidavits and the record, Your Honor, the trustee asked him questions at the creditor's meeting, and Mr. Lattin offered that information up so that he would fully disclose. And there's no reason to believe he would not have gone back and omitted this asset. He didn't do it. He should have done it. But is that enough to bar his claim based on judicial estoppel? Is it fair? Is it really fair for the integrity of the courts to maintain that integrity if it's not allowed to proceed? I would say that that completes a particular fact. And that's what the Supreme Court may really focus on. It completes the fact that each particular case. Judge Jones is a former bankruptcy judge. It seems like he would have maybe some sensitivity to the whole question of omission here. I would think so, too, Your Honor. I simply disagree with – I mean, I simply don't think he engaged in the balancing of the equities. And he simply – I believe he did simply pull the language from Hamilton, from this Court, Hamilton, and suggested that that would create a by-claim rule. That's, hey, if I put that, that's part of it. You know, we're not going to go any further than that. We're not going to look at advantage or disadvantage. We're not going to look at the items that Supreme Court, you know, the clearly inconsistent position, as the Court accepted that position. I mean, the Court didn't discuss that. If the Court had discussed that, then I think I – I mean, my job would be all the more hard before you today. I don't think – I think Hamilton does apply. I just would say that as the – just the Court in Oregon, in the procedure case, says that you look at the Hamilton facts and the overarching principles, underlying principles that, in fact, Hamilton would require that this claim be permitted in proceeding. All right, counsel, thank you. You have exceeded your time. Thank you to both counsel. The case just argued is submitted for decision by the Court.
judges: Rawlinson, Bybee, Burns